**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO.** |
| **v.** | : | **3:08-CR-60 (VLB)** |
| | : | |
| **MARK NALBANDIAN** | : | **December 29, 2009** |

**MEMORANDUM OF DECISION DENYING DEFENDANT'S**
**RULE 29(c) MOTION FOR JUDGMENT OF ACQUITTAL AND**
**RULE 33 MOTION FOR A NEW TRIAL [Doc. #126]**

## I. INTRODUCTION AND FACTS

The defendant, Mark Nalbandian (hereinafter "Nalbandian"), filed the instant Motion for Judgment of Acquittal and Motion for a New Trial, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure. Nalbandian was charged in a two-count superseding indictment with the following offenses: Conspiracy to Possess With Intent to Distribute and to Distribute 100kg or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(B)(vii); and Possession with Intent to Distribute and Distribution of marijuana, in violation of Title 21, U.S.C. § 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

The "conspiracy" in question was presented during trial by the Government as a conspiracy among Nalbandian, Sean Werner (hereinafter "Werner"), and Richard Judge (hereinafter "Judge"). At trial, extensive evidence was presented that there was, in fact, a drug conspiracy headed by Werner and Nalbandian which Judge joined. Furthermore, there was ample evidence that Nalbandian actually possessed with the intent to distribute a quantity that was

well in excess of the amount of marijuana for which he was found guilty of possessing.

The government's evidence relied not only on the testimony of Richard Judge, but also on the testimony of a law enforcement officer who was one of several officers who followed Nalbandian from Connecticut observing his every move, including his transfer of possession of marijuana to Judge. Judge testified that he met Nalbandian on several occasions and received large quantities of marijuana from him on each of these occasions using the same method of transfer observed and testified to by law enforcement.

## II. LEGAL STANDARD

The defendant correctly asserts that, under Rule 29 of the Federal Rules of Criminal Procedure (hereinafter "Rule 29"), "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). A Rule 29 motion should be granted only if the district court concludes there is "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972). To succeed on this challenge, Nalbandian must show that when viewing the evidence in its totality, in the light most favorable to the government, and drawing all inferences in favor of the prosecution, no rational trier of fact could have found him guilty. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gaines, 295 F.3d 293, 299-300 (2d Cir. 2002).

2

The defendant further notes, correctly, that Rule 33(a) of the Federal Rules of Criminal Procedure (hereinafter "Rule 33") provides that a trial court "may vacate any judgment and grant a new trial if justice so requires."  "The test is whether 'it would be a manifest injustice to let the guilty verdict stand.'"  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (quoting United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989)).  For a trial judge to grant a Rule 33 motion she must harbor "a real concern that an innocent person may have been convicted."  United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007) (quoting United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001)).

### III.  DISCUSSION

**A.  The Evidence Was More than Sufficient to Support A Finding Of Guilt Beyond A Reasonable Doubt As To The Conspiracy Charge, And Consequently A Judgment of Acquittal is Not Warranted.**

There was ample evidence to support a finding of guilt beyond a reasonable doubt as to the conspiracy charge, and consequently a judgment of acquittal should not enter.  At trial, the government proved the existence of a conspiracy by Sean Werner to obtain from Mark Nalbandian copious amounts of marijuana and Nalbandian's intent and concerted efforts to distribute marijuana to Werner through Judge.

The defendant argues that the evidence involving Nalbandian, specifically, was a fraction of the evidence admitted during trial and centered on the testimony of Judge, Special Agent Angelo Meletis, Special Agent Uri Schafer and Officer Craig Casman.  As noted by the defendant, however, that evidence was

3

highly credible and roundly corroborated.  It is the quality and not the quantity of the evidence that is determinative.  See United States v. Huezo, 546 F.3d 174, 180 n.2 (2d Cir. 2008) (in deciding whether the government has proven a conspiracy charge, "[t]he relevant inquiry - and the determinative inquiry - is not whether a particular quantum of evidence has been presented but whether the evidence that has been adduced establishes, in the mind of a reasonable juror, the defendant's guilt beyond a reasonable doubt); United States v. Weichert, 89 B.R. 346, 348 (S.D.N.Y. 1988).  Even the testimony of a single witness, credible in the mind of the trier of fact, may be sufficient to convict if it establishes each element of the offense charged beyond a reasonable doubt.  See U.S. v. Payseur, 501 F.2d 966, 971-72 (9th Cir. 1974).

To prove a conspiracy in violation of 21 U.S.C. §§ 846 and 841, the government must establish two essential elements:  (1) that the conspiracy alleged in the indictment existed, and (2) that the defendant knowingly joined and participated in it.  See United States v. Jones, 30 F.3d 276, 281-82 (2d Cir. 1994). The government "need not prove the commission of any overt acts in furtherance of the conspiracy."  United States v. Shabani, 513 U.S. 10, 15 (1994).  "The essence of conspiracy is the agreement and not the commission of the substantive offense."  United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998).  "As a matter of law, the crime of conspiracy must involve the agreement of two people to commit a criminal act or acts since the act of agreeing is a group act, unless at

4

least two people commit it, no one does."  Id.  (internal quotations marks omitted).

### Existence of the Charged Conspiracy

Nalbandian does not dispute that the government proved the existence of the conspiracy alleged in the indictment.  He further admits in his motion for an acquittal or for a new trial that "[t]he evidence at trial on that point was substantial."  Instead, Nalbandian challenges the sufficiency of the evidence that he was a participant in the charged conspiracy.

### Nalbandian's Participation in the Charged Conspiracy

In order to prove a conspiracy charge against a particular defendant, the government must introduce "evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."  United States v. Sanchez Solis, 882 F.2d 693, 696 (2d Cir. 1989) (quoting United States v. Garcia, 740 F.2d 174, 183 (2d Cir. 1984)).  Here, there was ample evidence to support the jury's finding  that Nalbandian knowingly joined and participated in the charged conspiracy.

### Evidence of Nalbandian's Knowledge of the Conspiracy

The government presented evidence from which the jury could have reasonably found that Nalbandian not only knew of but was an indispensable part of the Werner-Judge conspiracy.  Judge testified that Nalbandian first delivered marijuana directly to Werner, and that Werner introduced Judge to Nalbandian for

the purpose of arranging for Judge to pick up marijuana from Nalbandian for
Werner.  Further, Judge testified that after Werner introduced him to Nalbandian,
Judge accepted six large deliveries of marijuana from Nalbandian for Werner.
Although Nalbandian claims in his brief that he "was not familiar with any of the
alleged co-conspirators and was not aware of any other person's participation in
Werner's drug organization," Nalbandian did not testify at his trial and the
evidence introduced from witnesses who did testify soundly refute such an
assertion by his lawyer.

### *Evidence of Nalbandian's Participation in the Charged Conspiracy*

In addition to the testimony of Judge concerning the previous drug
deliveries Nalbandian made directly and indirectly through Judge to Werner, the
government introduced evidence from law enforcement officers who observed
Nalbandian drive a vehicle from Connecticut to New York, park the vehicle, enter
a diner, meet Judge in the diner, and give Judge the keys to his vehicle.  The
officers then observed Judge drive Nalbandian's vehicle to another location and
remove from Nalbandian's vehicle numerous black plastic garbage bags later
confirmed to contain massive quantities of marijuana, put the bags in his own
vehicle, and return Nalbandian's vehicle to the diner parking lot and the car keys
to Nalbandian.  Further, the jury heard testimony that Judge was acting as a
conduit for Werner and was interjected between Nalbandian and Werner on the
date in question because Werner was out of town.  The jury also heard testimony
that Werner gave Judge a cellular telephone and told him that Nalbandian was

going to call the cell phone to arrange to deliver the marijuana to Judge on behalf of Werner on a particular date.  In addition, the jury heard testimony that Nalbandian in fact called Judge on that cell phone and arranged to meet Judge at the diner where he later parked his vehicle, gave Judge the car keys, waited in the diner while Judge emptied the marijuana from his vehicle and then returned his car keys in the same manner as Judge had done five previous times.  Finally, the jury heard testimony that Nalbandian also delivered massive quantities of marijuana to individuals in Boston who had some relationship with Werner.  The unrefuted evidence demonstrated that Nalbandian was delivering drugs to Judge for conveyance to Werner.  Further supporting the conspiratorial nature of the relationship between Werner, Nalbandian, and Judge is the fact that Judge did not pay Nalbandian for the drugs.  Judge testified that a third person paid Nalbandian for the drugs he delivered to Judge.

Nevertheless, Nalbandian argues that the evidence at trial was insufficient to establish that he was a participant in the conspiracy because a buyer-seller relationship, without more, does not establish a conspiracy.  As stated by the Second Circuit, "while the illegal sale of narcotics is a substantive crime requiring an agreement by two or more persons, the sale agreement itself cannot be the conspiracy to distribute, for it has no separate criminal object.  Without more, the mere buyer-seller relationship is insufficient to establish a conspiracy . . .  The rationale for holding a buyer and a seller not to be conspirators is that in the typical buy-sell scenario, which involves a casual sale of small quantities of

7

drugs, there is no evidence that the parties were aware of, or agreed to participate, in a larger conspiracy.  However, this rationale does not apply where, for example, there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use. Under such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy.  It is clear, then, that the existence of a buyer-seller relationship does not *itself* establish a conspiracy; however, where there is additional evidence showing an agreement to join together to accomplish an objective beyond the sale transaction, the evidence may support a finding that the parties intentionally participated in a conspiracy." United States v. Hawkins, 547 F.3d 66, 71-72 (2d Cir. 2008) (internal citations omitted).  Factors that may be considered in determining whether the circumstances surrounding a buyer-seller relationship establish an agreement to participate in a distribution conspiracy include "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sale on credit ('fronting'), and the quantity of drugs involved."  Id. at 74.

In Hawkins, the Second Circuit reversed the district court's judgment of acquittal on the basis that the buyer-seller relationship failed to establish the defendant's participation in a conspiracy.  The Second Circuit reasoned that the evidence established that the defendant intended to redistribute some of the cocaine he purchased, that the defendant agreed to engage in this conduct with

8

the seller on an ongoing basis, and that they trusted each other to work together as supplier and street-level dealer.  Id. at 75-77.

### Other Evidence of Agreement

Here, in addition to evidence of the buyer-seller relationship between Judge and Nalbandian as outlined above, the jury also heard evidence of the relationship both men had with Werner in furtherance of the distribution of marijuana from which the jury could have found Nalbandian's participation in the charged conspiracy.  The defendant concedes that fact when he asserts his memorandum of law that "[t]here was virtually nothing else that existed other than existence of a buyer-seller relationship" (emphasis added).

Werner's introduction of Judge during a previous delivery by Nalbandian and pick up by Werner for the purpose of facilitating Judge's future pick ups of marijuana delivered by Nalbandian, and Werner's provision of the cell phone to Judge which Nalbandian called to arrange to deliver approximately 100 pounds of marijuana to Judge which Judge testified he planned to deliver to Werner's vehicle, is proof that Nalbandian had knowledge of the Werner conspiracy and that he agreed to join it.  It also shows Werner's knowledge of Nalbandian's plan and his agreement to further it.  A finding that Werner agreed to assist Nalbandian with his sales is supported by Werner's provision of the cell phone to Judge.

The testimony that Werner instructed Judge that he would receive a call to arrange a drug delivery from Nalbandian coupled with his testimony that such a

call was received, arrangement made, and drug delivery accomplished is evidence that Nalbandian received instructions or encouragement from Werner. It is also evidence that Nalbandian was involved in communications with conspirators Judge and Werner.  Simply put, there was sufficient evidence that Nalbandian intended to further or advance the interests of Werner and Judge's conspiracy, and not that he inadvertently did so, as required in this Circuit.  <u>See United States v. Santiago</u>, No. 5:01-CR-0113 (FJS), 2003 WL21254423, at *5 (N.D.N.Y. May 29, 2003).

Furthermore, the evidence at trial showed that the transactions between Nalbandian and Judge involved wholesale quantities of marijuana obviously not intended for personal use, which supports an inference that Nalbandian was a knowing participant in a larger conspiracy.  Such an inference is also supported by the circumstances surrounding the drug transactions between Nalbandian, Judge, and Werner, which clearly involved advanced planning and mutual trust between the conspirators.

B.  <u>The Evidence Was Sufficient to Support A Finding of Guilt Beyond A Reasonable Doubt As To The Possession Charge, And Consequently A Judgment of Acquittal Should Not Enter.</u>

The evidence was also sufficient to support a finding of guilt beyond a reasonable doubt as to the possession charge, and consequently a judgment of acquittal should not enter.

Both Judge and Officer Kasman testified that Judge took the drugs from Nalbandian's car trunk and placed them in his van.  There was also testimony

concerning the constant surveillance of Nalbandian's vehicle from Connecticut to New York and of Judge's driving with it.  Any inconsistency in the testimony as to minor details does not cast sufficient doubt on Judge's testimony as to render the evidence insufficient to convict.

**C.  A New Trial Should Not Be Ordered In This Matter As To Any Count In The Superseding Indictment Pursuant to Fed. R. Crim. P. 33.**

The Court has broad discretion under Rule 33 to set aside a jury verdict and order a new trial in the interests of justice.  See United States v. Sanchez , 969 F.2d 1409, 1413 (2d Cir. 1992).  A motion for a new trial on the ground that the verdict is contrary to the weight of the evidence raises issues different from those involved in a motion for a judgment of acquittal based on the sufficiency of the evidence.  See United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). "On a motion for a new trial based on the weight of the evidence, the [district] court need not view the evidence in the light most favorable to the verdict."  Id. Instead, "[i]t may weigh the evidence and consider the credibility of the witnesses."  Id.  "If the court concludes that, 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.'"  Id. (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

11

Nalbandian submitted his motion for a new trial based upon substantially the same grounds as his Rule 29 motion.  Specifically, Nalbandian claims that the evidence at trial preponderates heavily against the verdict because the evidence does not prove that he knowingly participated in a conspiracy or possessed a controlled substance.  The Court does not concur with the defendant's assessment of Judge's credibility.  Judge appeared truthful and remorseful.  The Court has had occasion to see many defendants assert their remorse and profess a desire to right their wrongs.  Few have been as convincing as Judge.  Moreover, his testimony was corroborated by physical evidence, the quantity of marijuana involved, and the testimony of credible law enforcement officers.

## CONCLUSION

For the reasons stated above, the defendant's Rule 29(c) motion for judgment of acquittal and Rule 33 motion for a new trial [Doc. #126] is DENIED.

SO ORDERED

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  December 29, 2009.

12